Our second case for argument this morning is Consumer Financial Protection Bureau against Consumer First Legal Group. Mr. Loewe. Good morning. May it please the Court? I'm John Loewe and I represent the defendants. And I think what I'd like to observe first is just how unusual this case is in the sense that there are so many ways that this verdict doesn't stand. It doesn't get past liability because nobody proved the defendants did anything wrong. There is no authority to regulate in the first place and the damage award can't even be remotely justified. So as I said, it's difficult to know where to start. I'm going to talk about practice of law, but I want to touch briefly on liability because what this case really represents is just a colossal failure. The trial, the case, the CFPB's case lasted less than two days. There was almost no evidence of any kind of wrongdoing. Eight client witnesses cherry-picked by the CFPB. Nobody alleged anything that connected up to the regulations that the defendants supposedly violated. And at the end of the day, there's no adverse testimony. And not only did they prove no violations, no client who was misled, nothing but no ability to extrapolate even if they had. So, you know, they try to brush past it, but the fact is they've skipped that step. They did not prove the defendants did anything wrong. Weren't some of those findings made at the summary judgment stage, though? And in addition to the live testimony, didn't the district court have deposition testimony? So it might be a little deceiving to just say six live witnesses. Well, actually, the district court did decide you can't contact your lenders directly on summary judgment, but based it on no testimony. Did it exclusively on the script and the welcome letter? So there was no, hey, we showed this happened for 57 clients who went to extrapolate. It was just purely the script. And as it turned out, it was less than one-tenth of 1% of all the clients who alleged these representations were made to them. No client ever was it shown they changed their purchasing decision. So can I ask you, Mr. Lovi, about one of the things that you seem to focus on with respect to whether under Regulation O you were engaged in the practice of law. The judge, and you criticized this, used this, kind of distilled from all of the states, this general idea that the application of legal principles to facts is kind of a common ground. And nobody objects to that in any serious way. Nobody tells the judge, no, you have to, that's true of a lot of states, but it's not true of certain other states. I'm really wondering whether you preserved this point. No, with respect, that is, sorry, Judge Wood, excuse me, Judge Wood, that is not how it went down. Before trial, Judge Crabb ruled that it would be state by state, and both the CFPB and the defendants agreed that it would be state by state. More than 100 pages of briefing from both sides on each state, how many clients were affected, applying each state's laws. They talked about representative states. They talked about agreeing on what each state said. There was 10 unresolved states. Judge Crabb says, we're going to do those at trial. So it was a total agreement by all three sides that this would be state by state. When Judge Conley inherited the case shortly before trial, he just decided to short circuit it. We're going to apply this industry trade definition that's the law of nowhere because it's been fully adopted by no states. And there was objections. Judge Wood, I believe it's page 47, note 21, cites three places to the record where we said, no, you can't just apply an industry trade group. You have to go state by state. I mean, three times we objected. And you know, some of you are trial judges. In practical terms, there's only so many times you can keep saying the same thing before the judge does what the judge is going to do. And this judge decided that for practicality, for expedience, he was going to apply this industry definition. And it was error. That Firestone case is right on. There's a reason we don't have national class actions. If that CFPB wants to exercise its enforcement authority far and wide, then they are obligated to apply the law of the jurisdictions where they seek to enforce. And so your position has to be that spending five minutes skimming over a file to make sure that everything's in the file is the practice of law? Well, Your Honor, we have a lot to say about practice of law. But to answer your question, yes. The same way a bankruptcy attorney has paralegals assemble the documents, if they look at them, they analyze them, they review them, they apply the HAMP guidelines, that is the practice of law. A real estate lawyer might do a real estate closing in two minutes skimming documents. You know, there's all kinds of practice of law. There's arguing constitutional abortion statutes. And then there's sort of high volume practice like this, where you review financial documents, you look at debt to earning income ratios, you see if it complies with the guidelines, you would analyze the documents, you advise your clients. And yes, that is the practice of law. Fundamentally, this case founders because Congress said that the CFPB does not have authority to regulate the practice of law. Look what they've done here. They've sued four lawyers in their law firm about a relationship between an attorney and a client about fundamentally resolving a debt about dealing with a creditor in a breach of a contract situation. They want to regulate the terms of the retainer agreement, they want to regulate the terms of the attorney fee, they want to regulate the terms of the attorney-client advice. And there is no authority granted by Congress to do that. Judge Wood, on the practice of law question, there's no dispute that there is an attorney-client relationship here. All 6,400 of their clients signed an attorney-client retainer agreement. All eight representative clients testified that they had an attorney-client relationship. All the representative local partners, the same. And even Judge Conley said there's an attorney-client relationship here. That's the kind of thing that lawyers do. And it's absolutely the case. You know, I've talked about the foreclosure work, the mortgage work, but you have the foreclosure defense, which the district court didn't even want to talk about. Thousands or more clients got foreclosure defense. What this law firm did was it sold a suite of services to clients. They might not have needed them all, and they might not have all needed them, but sometimes it was available to them. So, Judge Wood, you've said... Doesn't the CFPB, though, indicate... I mean, you're saying it's a suite, and I suppose in the aggregate there was, but a very, very small number of people apparently were taking advantage of services other than just the mortgage assistance relief package. And paying extra for it, of course, but I guess we don't need to get into the payment right now. Well, we dispute that sharply, Judge Wood. The foreclosure defense, there was a lot of testimony at trial from local partners who said, we did this. Maybe a quarter to a third of the people who retain this law firm were in foreclosure. What you've done is accepted the CFPB's representation that there were only 30. Judge Conley never accepted that, and there's no basis to accept it. What my colleague is going to refer to is, if you look at the notes, there were only 30 those were the rare clients who said, we don't want any other services, we just want you to defend foreclosure. But the real number was closer to 1,400 clients who got foreclosure defense services. But didn't you come up with that number through a keyword search, right? Actually, the 30 number that you just referenced, saying that there weren't a lot of foreclosure defenses, that was the keyword search. That was the CFPB's estimate based on foreclosure only. Using different terms and the same methodology, we came up with 1,400. You're not going to be able to break that tie. You don't know exactly was it 30 or 1,400. But what we do know was the testimony was, we did a whole lot of this, and that was uncontradicted testimony. Colin Banyan's full-time job was foreclosure defense. The CFPB concedes that that is practice of law. It has to be there. You file an appearance, you're doing a discovery, you're mediating, you're extending foreclosure dates, and the district court just wants to ignore that completely. There was a lot of foreclosure defense. The court didn't seem to ignore that. The way I read Judge Conley's opinion is that he was really focusing on what the defendants did, not the local attorneys. And if you look at what the defendants did, they set up this relationship to make it appear as if they were a law firm, but they really weren't. And the defendants were, didn't have any, the clients who came on didn't have any substantive discussions with any kind of attorneys up front. They were brought in by the defendants, they paid their fee, they signed these retainer agreements, but really no advice was given, no discussion about the types of advice. That was kind of done down the road by local attorneys, primarily at a very pro-forma letter where they really weren't practicing law. And even if some of them were practicing law, it didn't matter because when looking at the defendant's involvement up front and pulling them in, they weren't practicing law. And Judge Saineev, I think you've hit it on the head because at the end of the trial, they had that post-trial hearing. And Judge Conley said, don't try to convince me these local guys weren't practicing law. They were reviewing documents. Of course, they were practicing law. It might not have been wrote, it might've been kind of simple, it might've been kind of short, but they were practicing law. What Judge Conley said to the plaintiff was, you should be focusing on the headquarters attorneys. And what the CFPB did not take that bait because the statute says you cannot regulate the practice of law. And practice of law is defined as if you, under the law of your state, under the law of every state, including Illinois, a headquarters attorney could affiliate with a local council. And that's suffice. That's why the CFPB has never made the argument you just made, Judge Saineev. But does it matter if they made it or not, if that's what Judge Conley found? Because I read through the rulings and through the testimony and through the closing arguments where there were a with the district court about what really was at issue here. And I agree Judge Conley did seem to rule on a bit of a different basis than what the plaintiffs were advocating for, but does that matter? And why is his ruling, regardless of what the plaintiffs argued, why is that erroneous? Judge, because the reason he backed off it and they backed off it is because it's wrong. Multi-jurisdictional law firms are permitted. He didn't back off of it. He did not back off of that. Well, he originally said they are practicing law, but go after the headquarters attorneys. But at the end of the day, the defendants were permitted. It's not evading the regulation, it's complying with the regulation. There is nothing wrong with them practicing law at the end of the day. But let's say the local attorneys did not practice law. But let's say the local attorneys didn't practice law. We still win because it is acceptable for the headquarters attorneys to get local counsel who agree to be bound, who agree to be subject to malpractice, who agree to affiliate, whether they're treated as local partners, local counsel, or people just putting up their license, you can affiliate with local counsel. Somebody was practicing law. But it seems like his ruling was exactly the opposite that he push comes to shove. He didn't say this, but maybe he would have agreed that the local attorneys were practicing law. But what the defendants at headquarters were doing here was not practicing law for the reasons that I said a moment ago. What's erroneous about that ruling? I mean, Judge, I think the record testimony showed there was a lot of law being practiced at headquarters. That's how this firm was structured. It was an economies of scale type situation where just like their bankruptcy law firm, you do the work in-house in headquarters. So what's the law? And I'm sorry to interrupt, Mr. Levy. What does the record show was the law being practiced at headquarters? That's where the major modification work was happening, Your Honor. And that's my colleague says that the local people were purely redundant, that all the action was at headquarters. That's really the CFPB's argument. Who testified to that? Everybody. I mean, Colin Bannion, Kelly Siebert. Our brief really laid it out. We really laid out exactly what I'm saying, is that what they're saying is all the action happened at headquarters. What the CFPB is saying is you had it set up so the mortgage modification work was done at headquarters and the local people were there for superfluous. Of course, our point is it doesn't mean neither is practicing law. It means they're both practicing law. But the record will show that their position, our position, everybody's position is the work was happening at headquarters where they tripped, where they thought the defendant's tripped was. The regulation says you have to be licensed in the state where the property or the client is. That's what the regulation says. And that's what they backed off of, Judge St. Eve, because the statute says you only have to be licensed under the law of the state where you're practicing. And under the law of this state where you're practicing, you can affiliate. You can affiliate with local counsel. You can affiliate with local partners. That is why Judge Conley did back off, because he didn't want to take on a multi-jurisdictional law firm structure. That complies with the law. Law was this was a law firm doing things lawyers do. So somebody was doing it, Judge St. Eve. They're claiming it was done at headquarters more than they were claiming it was done at the local level. We're claiming it absolutely was done at both levels. What if it was only done at the local level? What if it wasn't done at headquarters? As I read the district court's opinion that this wasn't done at headquarters, this whole setup was kind of just a facade to get around and make it appear as if there was this multi-jurisdictional law firm. Well, then they would lose, Judge St. Eve, because, I mean, let's take a step back. Congress said, the agency only gets as much authority as what Congress gives them. Congress said, as CFPB, you do not have authority to regulate the practice of law. You do not have authority to regulate the practice of law. The defendants set up a law firm where, like their bankruptcy practice, there was a lot of efficiency. It was done at headquarters, and they used local partners. So there's really nothing to debate if law is being practiced at headquarters, and there's nothing to debate if law is being practiced at the local level. Judge Conley said, well, I find this whole thing distasteful, but that doesn't, you know, it's a country of laws and evidence. What did they violate? They didn't violate anything. They had, CFPB has no authority to regulate the practice of law. If the defendants were practicing law at headquarters, there's no authority to regulate, and if they're practicing law at the local level, there's no authority to regulate. I want to. Mr. Loewe. Yeah. When you come back. You're a little off screen. Oh, sorry. You're off center. I know many people accuse us of being off center. You've said several times there's no authority to regulate a multi-jurisdictional practice, and I wonder whether that tracks the statutory language, because the statute says the legal services have to be rendered by a person licensed to practice law in the client's jurisdiction. So if you have a multi-jurisdictional law firm with somebody in Arizona and somebody in Illinois rendering advice to a person in Arizona, why is the person rendering the advice in Illinois covered by the exemption? I think you need to address the statutory language, which so far you haven't mentioned. Judge, you've hit the most interesting issue in the case, but the statutory language doesn't say that the lawyer has to be licensed in the state of the property of the client. It says under the laws of the state of the client. What you just read was what the CFPB and the FTC's regulation says, that they literally have to be licensed in the state. If we look at the statutory language and it's 1027E1, it says with respect to an activity engaged in by an attorney, the may not exercise supervisor authority with respect to an attorney engaged in by an attorney as part of the practice of law under the laws of the state in which the attorney is licensed to practice law. Under being the key word. If I practice law in Illinois, Illinois law and bar rules allow me to practice in other jurisdictions. If you were to read it so that it was literally you had to be in those jurisdictions, I couldn't prohock, I couldn't have partners in those states. I couldn't. Look, Mr. Loewe, I'm not asking what Illinois law provides. I'm asking whether the statute requires the advice to be given in my Illinois, Arizona hypothetical by a lawyer in Arizona practicing under Arizona law rather than Illinois law. Well, the headquarters attorneys were in Illinois and the plain statutory language says as long as I'm complying and I'm doing it under the laws of my state, then the FTC and the CFPB cannot regulate me. And that's our point, Your Honor, is under the laws of Illinois, I can affiliate with local counsel. Under the laws of Illinois, I can have partners in the various states. It's an ultra varies application to do what the CFPB did here, which said you have to literally be licensed in that state. And they don't want to defend that because it's indefensible and because it would prohibit multi-jurisdictional law. So, Your Honor, the plain statutory language provides that what they did here under the laws of Illinois, they were compliant and there is no authority to regulate. I do want to talk briefly about damages. There is absolutely no authority for a $21 million restitution award. We've talked about it at length in our brief. First, they said it was deception. Then they didn't prove deception. Then they said consumer loss. There was no consumer that lost anything here. $21 billion bears no relationship to anything that happened. The Lew case puts to rest any debate that it should have been net profits, not gross revenues. That's a case decided after trial. It's mandatory language. It's very clear. And the CFPB's only response is, well, that would mean there's no damages. Well, if you have a case where no consumer was injured and the defendants have no ill-gotten gains, then no damages is the correct result. Even if you disagreed with me and found a technical violation on liability or that there was authority, there was no damages here. And the penalty award, even less defensible. They don't even postulate a coherent narrative that could support it. The district court found that the conduct wasn't wrongful on its faith or in nature. He found that there was ambiguity about Regulation O, and he found that they had gotten this ethics opinion. To say that on top of that they're going to throw $31 million in penalty is unconscionable. The defendants did not commit any kind of liability that could support that kind of penalty. I see that I'm out of time. If there are other questions, I will answer them. But otherwise, we ask you to correct this injustice. Thank you very much, Mr. Lovi. Mr. Friedel. May it please the court, Kevin Friedel for the Consumer Financial Protection Bureau. So there was a lot in that presentation that we disagree with and that was inaccurate. I'll get right into it. With respect to the Bureau's authority concerning conduct undertaken as part of the practice of law, there are really two provisions here. There's a statutory provision in 12 U.S.C. 5517E. There's this regulatory exemption in Reg O itself. So this and defendants inaccurately describe both of these. So the statutory limitation, defendants are correct that in 5517E1, it says that the Bureau's enforcement or supervisory authority is limited over the practice of law in certain respects. E3 of that same provision, which defendants completely ignore, says, however, this limitation does not apply to the extent an attorney is subject to certain preexisting federal authorities of which Regulation O and the statute under which it was promulgated qualify. So the statutory exemption has nothing to say about this case here and is completely a red herring. The regulatory exemption is also being, I think, inaccurately described. So it is more complicated than just exempting all attorneys who are practicing law or all attorneys, the various ways defendants describe it in the brief. That's not what it says. This is in 12 CFR 1015.7. Even in the truncated form of this exemption that the district court applied at trial, we think it was error that actually imposed too high of a bar for the Bureau. Defendants should have also had to meet other parts of the exemption that the court erroneously held were invalid. But even under this truncated form, defendants had to show that for an attorney to be exempt, had to be providing mortgage relief services as part of the practice of law to a consumer in the state where that attorney is licensed. So what is... Envision the operation of this system for one of the many multi-jurisdictional law firms that we have in the country these days. I mean, huge numbers of firms. Jones Day is all over the planet, actually, not just even the country. Does it mean they just have to stay out of this business or does it mean that there's some way to comply? No, Judge Wood. We have not disputed that if the local attorneys were in fact providing these services as part of the practice of law and if they were associated with the defendants' entities in some meaningful way and met the other parts of the exemption that they could have qualified. We're not making the argument that it was impossible for this structure to be exempt from the regulation. So just to be clear, if in your view the facts had shown that the local attorneys were doing enough to qualify as the sort of things to qualify as the practice of law, then it doesn't matter if there's a mothership in Chicago that's got a few lawyers who are compatible with this statute and regulation? We haven't disputed that, Your Honor, in this case. But what we argued and what Judge Conley correctly found was that what the local attorneys did here didn't satisfy, again, even this artificially, this is a shortened version of the exemption such that any of the that defendants haven't addressed either here or in their briefing. For example, the evidence showed that for nearly 2,000 of defendants' consumers, they were never assigned a local attorney at all. Defendants have no response to that. But certainly as to this, which is almost a third of their customer base, they can't seek to hide behind the local attorney's law licenses and say that they're exempt on the basis of the work when these local attorneys were not assigned to those consumers. There's also this issue. So if I go to the firm of Smith v. Jones in Chicago because I'd like some help contesting a contract or something, I'd like some help with a transaction, don't I sign the retainer agreement with the firm and then whether I wind up working with a certain partner or some associates or a combination of those things, that can be determined later? Perhaps, Your Honor, but to qualify for this exemption, defendants had to show that these local attorneys were actually, under the language of the regulation, providing these services as part of the practice of law to consumers in their states. Did the district court decide that question, though? The district court didn't seem to focus on or conclude one way or the other exactly what the local attorneys were doing here. And I know there was a lot of dialogue about that back and forth during the closing arguments. The court seemed to focus on what was happening at headquarters. Do you agree with that? I don't. We read the district court's decision as being very concerned with the superficiality, redundancy of the work that the local attorneys were doing. It's discussed at length in the sort of factual background section that precedes the court's analysis. I think you're absolutely correct that Judge Conley was also concerned about defendants' attempts to sort of portray the local attorneys as being partners in these firms. He didn't think. I believe that there was really meaningful connection between the local attorneys and the firms. But I think this all sort of goes to the broader point that, clearly, Judge Conley was looking at the totality of the defendants set up. And clearly, that system did not call for the local attorneys to be, it did not require them to be providing, to be applying legal judgment and expertise to particular facts, this definition that Judge Conley adopted as a starting point for how he was going to approach this question. I didn't see his ruling as concluding that the local attorneys across the board were not providing mortgage assistance relief. Did he rule on that? I didn't see that in his ruling. He emphasizes that certain local attorneys might have considered and wanted to be providing bona fide legal services. But you looked at the system that was set up as a whole, the fact that there were, as the Bureau showed, only 30 consumers who actually got these foreclosure defense services that defendants focus on. For most of them, they were just getting help with mortgage modification applications that was done by defendants' non-attorney staff. So do you read the holding as saying that these local attorneys were not providing legal services? Yes, that they didn't meet Judge Conley, the definition that Judge Conley was applying. The local attorneys or the headquarter attorneys? The local attorneys and I believe the headquarters attorneys. But I think what we're discussing is really multiple bases on which the judgment could be affirmed. And I do want to emphasize that there are actually two completely other grounds for affirming the district court's finding with respect to the exemption. They don't even require the court to go down this road. We think clearly defendants have not shown that there was clear error in Judge Conley's bottom-line factual finding. But if the court disagreed or even if the court just didn't want to resolve the case on that basis, it could also affirm this part of the court's finding and the judgment overall because defendants didn't satisfy these other parts of the exemption that the court had, at summary judgment, incorrectly held were invalid. So one of these, this is in 12 CFR 1015.7A3, requires that for an attorney to be exempt, they have to show that they were complying with applicable state rules that govern the same sort of conduct that this rule covers. And defendants absolutely couldn't make that showing as the Bureau argued at summary judgment. The district court found them, both district judges who heard this case, issued rulings finding that defendants had made multiple types of misrepresentations to consumers. Clearly, that shows they could not satisfy this element because they couldn't show they were complying with state UDAP laws by prohibiting unfair and deceptive trade practices, couldn't show they were complying with bar rules governing requirements. Counsel, what is the source of the Bureau's authority to promulgate that particular regulation? Section 626 of the Omnibus Appropriations Act of 2009 and the Bureau statute, the Consumer Financial Protection Act, transferred from the FTC to the Bureau the authority over this regulation, which governs mortgage relief providers. I don't think that really gets to my question. Mr. Vovey's argument, as I understand it, is that the statutory exemption permits something that the regulatory exemption does not. So I suppose the question is, in what sense what is the source of authority for the agency to countermand or contract the scope of the statutory exemption? That's the question. I'm not sure I understand the premise of the question, Judge Easterbrook, because I don't think that that's what we've done here. The statute, 5517E1, says the Bureau may not exercise any supervisory or enforcement authority with respect to an attorney activity, ta-da-da-da-da-da, under the laws of a state in which the attorney is licensed to practice law. And Mr. Vovey's argument is that the defendants were licensed to practice in Illinois, which permitted them to do what they did as attorneys, as long as they associated with local counsel. The regulation, 1015.7A2, says that this is true only if the client is in the same state as the attorney, right? The in which the consumer's dwelling is located. So the regulatory exemption looks narrower than the statutory exemption. And the question I'm asking is, in what is the source of the Bureau's authority to narrow the scope of the statutory exemption? Now, Mr. Vovey may be wrong about his interpretation of the meaning of the statutory exemption, but to the extent that the regulatory exemption is narrower, what is the source of the Bureau's authority to do that? That's what I'm asking. So I think that there are two issues here, Judge Easterbrook. One, the statutory limitation we're discussing is a limit on the Bureau's enforcement and supervisory authority. It doesn't purport to speak to the Bureau's rulemaking authority, which is what it exercised in issuing Regulation O. Regulation O can also be enforced even now by the FTC and by the states. And as we note in our brief, you know, in various areas, the Bureau's rulemaking authority and its enforcement authority are not coextensive. The other point I would make is I think you're overlooking E3, which says, even with respect to our enforcement authority, this is not a limitation on the Bureau's authority to pursue violations of the enumerated consumer laws, of which Section 626 of the Omnibus Appropriations Act is one. That's the statute that gave us the authority to promulgate this rule. Or authorities transferred to the Bureau under certain subtitles of its statute. Regulation O is one of those. So the statutory limitation simply has no role to play here whatsoever. It doesn't limit our authority to have issued the same rule that the FTC had previously. It didn't limit our authority to bring this action. And as a general matter, I just want to be clear. Defendants seek to portray this as the Bureau trying to regulate the practice of law. That's not what we're doing. This Regulation O is about mortgage relief service providers. The Bureau in bringing this action was seeking to enforce that against a nationwide mortgage modification mill that sought to hide behind this facade of local attorneys. Now, Regulation O, actually, it applies to mortgage service providers generally. However, regardless of whether they're attorneys or not, however, attorneys actually get special treatment under the that they meet these, you know, specific conditions of the regulatory exemption. And Judge Conley correctly found certainly there was no clear error that they had failed to satisfy the first two elements of the exemption. Judge Conley, you know, was the one who oversaw the five-day bench trial here, was familiar with the I don't know how many hundred pages of deposition testimony, the hundred trial exhibits. And, you know, clearly, we believe there's no basis for a finding that, you know, there was clear error here that the factual record didn't provide a plausible basis for that ruling. I don't understand how deposition testimony and trial exhibits can answer a question about the Bureau's legal authority. Judge Ezra, there's no question about, there might be, there was a question at trial about the Bureau's authority to bring this case. You've cited this statutory limitation. It doesn't, by its terms, it doesn't apply here. And so the trial exhibits don't speak to that question. They speak to this different issue of whether the defendants could qualify for a regulatory exemption that they didn't show they qualified for. And in addition, you know, again, there's this finding Judge Conley made, that's one basis for affirming his decision. There's also the fact that defendants couldn't satisfy this other provision that they, showing that they complied with relevant state laws. They clearly didn't. They were making all sorts of misrepresentations to desperate homeowners, telling them that they were going to receive legal services from a consumer. But did the court reach that conclusion? I'm sorry, Your Honor? Did the court, district court, reach that conclusion? On your alternative argument that they weren't meeting this third prong? No, no. And the reason is because Judge Crabb had held in her first summary judgment order that A, 3, and B, those parts of the regulatory exemption we're talking about in Reg O, she held that those were invalid and outside the Bureau's authority to issue on the basis of this statutory limitation we've been talking about, which doesn't even speak to the Bureau's rulemaking authority in the first place. So we think that that was error, but that holding governed what Judge Conley did later. And that's why at trial he was considering only these first two elements of the exemption and found even with that standard that they couldn't show their exemption. So Mr. Friedel, before you run out of time, which you're quickly doing, I would appreciate a few words on Lew against SEC, because I'm concerned about the use of net revenues as opposed to net profits. The term net profits appears about every fourth line in the Lew opinion. And the Supreme Court uses examples from many different areas of the law as it's engaged in this discussion. So I was interested in your position there. Yes, Judge Woods. So we don't think Lew applies here because it was about a different remedy, but I want to make sure I make something clear to the court. The court doesn't have to decide this question here, because even if Lew applied, it would make no difference in this case. On summary judgment, defendants were already arguing this restitution amount, which the Bureau came forward with. They were arguing this has to be reduced to account for our expenses. So it should be profits, not net revenues. And they were arguing it has to be reduced to account for whatever value their clients supposedly received. They made those arguments even before Lew, but the district court found they had failed to back that up the way you have to do at summary judgment with a specific number. They didn't say the restitution amount should be reduced by any specific figure. They didn't connect that to specific facts in the record. All the things you have to do at summary judgment. So Lew just says you get an opportunity to try to get these. Who has the burden on those questions? I'm sorry? Who has the burden on those questions? Wouldn't the person seeking the judicial award be the one who has the burden to show what the net profits are? That's normal in contract litigation. I think that this is governed, you know, whether or not Lew applies, I think this is governed by the same sort of two-step inquiry the court and many others have employed this court in FTC v. Febra and Trudeau, where the Bureau or the plaintiff comes forward with their estimate of what these damages should be. And the other side has the obligation at that point. Has the Bureau ever come forth with an estimate about the defendant's net profits as opposed to gross receipts? No, and nothing would have required us to do that. I could understand an argument that if the Bureau had made a good faith effort to estimate the defendant's net take, then the defendants should be required to show something different. But if all the Bureau has ever tried to do is estimate the gross receipts, and that's legally the wrong standard, why does that move a burden to the defendants? I think this case is no different from this court's decision in FTC v. Febra in this respect, because there that was an FTC case brought. It was decided at summary judgment. The FTC came forward with its estimate at summary judgment of the appropriate amount of restitution. The defendants there were claiming, just like defendants here, that that amount should be reduced to account for their expenses, that it should be basically profits, not revenue. And the district court found they hadn't properly presented that argument because they didn't put forward specific facts in the record. All the things, again, you have to do at summary judgment typically, and this court affirmed on that basis. Thank you, counsel. I think we have your position. The case is taken under advisory.